## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| QBE Insurance (Australia) Limited, as assignee and subrogee of Lohmann & Rauscher Pty Ltd., | Case File No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| C.H. Robinson International, Inc., and C.H. Robinson Freight Services, Ltd. d/b/a CHRistal Lines, | |
| Defendants. | |

Plaintiff QBE Insurance (Australia) Limited, as assignee and subrogee of Lohmann & Rauscher Pty Ltd., as and for its Complaint and claims for relief against Defendants C.H. Robinson International, Inc. and C.H. Robinson Freight Services, Ltd. d/b/a CHRistal Lines, states and alleges as follows:

### PARTIES

1.      QBE Insurance (Australia) Limited ("**QBE**") is an Australian public company with its principal place of business and registered office address located at 388 George Street, Sydney, New South Wales 2000, Australia.

2.      QBE is an insurance company engaged in the business of issuing policies of insurance and providing insurance coverage to its insureds.

3.      QBE issued a policy of marine cargo insurance to Lohmann & Rauscher Pty Ltd. ("**Lohmann**").

4.      Under the terms of the insurance contract, Lohmann agreed that QBE can pursue a right of recovery in this action, and pursuant to Federal Rules of Civil Procedure 17(a)(1)(F), QBE is the real party in interest.

5.      C.H. Robinson International, Inc. ("**C.H. Robinson International**") is a Minnesota corporation with its principal place of business located at 14701 Charlson Road, Eden Prairie, Minnesota 55437, and with its registered office address located at 2345 Rice Street, Suite 230, Roseville, Minnesota 55113.

6.      C.H. Robinson Freight Services, Ltd. d/b/a CHRistal Lines ("**CHRistal Lines**") is an Illinois corporation with its principal place of business located at 1501 N. Mittel Blvd., Suite B, Wood Dale, Illinois 60191, and with its registered office address located at 2345 Rice Street, Suite 230, Roseville, Minnesota 55113.

## JURISDICTION

7.      This action seeks recovery of a claim for damage and/or loss of cargo in transit, which is cognizable as an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and involves application of 46 U.S.C. § 30701 *note* - the Carriage of Goods by Sea Act ("COGSA"), and as such this court has subject matter jurisdiction over this action under 28 U.S.C. §1333.

8.      This Court has further subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question).

9.      This Court has supplemental jurisdiction over the state law claims alleged pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

2

## VENUE

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, C.H. Robinson International resides in this judicial district as its place of incorporation. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, C.H. Robinson International and CHRistal Lines are subject to the court's personal jurisdiction.

## FACTS

11.     On October 17, 2023, QBE indemnified Lohmann for its losses with respect to a consignment of 102 cartons of medical grade compression socks (the "**Consignment**") pursuant to the terms of an insurance policy it issued to Lohmann, and QBE became the subrogated insurer of Lohmann.

12.     On August 23, 2022, Lohmann purchased the Consignment from L&R Can Inc., an Ontario, Canada business corporation, on FOB terms.

13.     Lohmann contracted with C.H. Robinson International and CHRistal Lines (collectively, the "**Carrier**") to ship the Consignment from Mississauga, Ontario to Truganina, Australia (the "**Contract of Carriage**").

14.     Paragraph 20 of the Carrier's Contract of Carriage contained in or evidenced by the Bill of Lading provides that "[a]ll lawsuits arising out of or related to carriage provided under this Bill of Lading shall be brought in the United States District Court for the District of Minnesota."

3

15.     The Contract of Carriage was evidenced by a multimodal bill of lading issued by the Carrier numbered 408454454MTR, and dated September 16, 2022 (the "**Bill of Lading**").

16.     The Carrier stuffed the Consignment into a less than container load container numbered TLLU7831168 (the "**Container**") for shipment.

17.     Lohmann was named the consignee in the Bill of Lading with respect to the Consignment shipped under the Bill of Lading.

18.     Lohmann was entitled to possession and delivery of the Consignment as the named Consignee in the Bill of Lading.

19.     On or about September 16, 2022, the Container was shipped from New York, United States, on board M.V. "MARINER" for voyage number ORPBFSIMA, and then transhipped to Melbourne, Australia on M.V. "GSL CHRISTEL ELISABETH" (the "**Vessel**") for voyage number OABA4NIMA (the "**Voyage**").

20.     On or about November 10, 2022, the Vessel arrived in Melbourne, Australia, and the Container was discharged from the Vessel.

21.     On or about November 17, 2022, the Container was delivered to DHL Supply Chain (Australia) Pty Ltd. ("**DHL**") premises for warehousing and distribution of the Consignment.

22.     Upon the Container's arrival at DHL's premises, it was observed that the Consignment was damaged and emitting a strong, unpleasant odor.

23.     As a result of the damage, the Consignment was a total constructive loss (the "**Loss**").

24. The Carrier has failed, refused, and neglected to pay the Loss or any sums to Lohmann or QBE.

## COUNT I
### BAILMENT

25. QBE incorporates by reference all paragraphs previously set forth.

26. The Carrier was under a duty as carrier and/or bailee for reward to carefully keep and care for the Consignment.

27. The Carrier breached its duty as bailee, by, among other things:

   a. Failing to place the Consignment in a Container with no odors;

   b. Failing to place the Consignment in a Container that did not require fumigation;

   c. Failing to carry out any pre-trip inspection or any adequate pre-trip inspection of the Container;

   d. Permitting the Consignment to be carried in a Container that emitted odor or near a Container that emitted odor for some or all of the Voyage;

   e. Failing to monitor the Container to ensure that it was not exposed to odors for the duration of the voyage;

   f. Failing to have an adequate system in place to identify any odors and to rectify any odors promptly so as to avoid damage to the Consignment;

   g. Failing to take adequate steps to ensure the Container was not affected by odor during the Voyage, or at all;

5

h.    Failing to properly monitor the Container during the Carrier's period of responsibility to ensure that no odors affected the Container, or at all;

i.    Failing to take steps to prevent the Consignment from being contaminated; and

j.    Permitting the Consignment to be contaminated.

28.    In breach of the aforesaid duty as bailee for reward, the Carrier failed to deliver the Consignment in the same good order and condition as when the Consignment had been delivered to the Carrier.

29.    As a direct and proximate result of the Carrier's breach of its duties as bailee for reward, QBE, as subrogee and assignee of Lohmann, has been damaged in an amount believed to be in excess of $48,000.

## COUNT II
## BREACH OF CONTRACT

30.    QBE incorporates by reference all paragraphs previously set forth.

31.    It was an implied term of the Contract of Carriage that the Carrier would deliver the Consignment to Melbourne, Australia in the same good order as when the Consignment was delivered to the Carrier, which implication arises reasonably and necessarily to give business efficacy to the Contract of Carriage.

32.    The Carrier breached the implied term of the Contract of Carriage by failing to deliver the Consignment in the same good order and condition as when the Consignment was delivered to the Carrier.

4063013.v3

33.     As a direct and proximate result of the Carrier's breach of the implied term of the Contract of Carriage, QBE, as subrogee and assignee of Lohmann, has been damaged in an amount believed to be in excess of $48,000.

## COUNT III

### VIOLATION OF THE CARRIAGE OF
### GOODS BY SEA ACT (46 U.S.C. § 30701, et *seq.*)

34.     QBE incorporates by reference all paragraphs previously set forth.

35.     Paragraph 4(a) of the Carrier's Contract of Carriage contained in or evidenced by the Bill of Lading provides the following:

> For shipments to or from the United States, the custody and carriage of goods and the liability of Carrier shall at all times be subject to the provisions of the Carriage of Goods by Sea Act of the United States of America approved April 16, 1936 (COGSA) which is incorporated herein as a part of this Bill of Lading. COGSA shall apply to all goods including goods carried on-deck or below deck.

36.     Pursuant to the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 note, § 3(1), the Carrier was bound before and at the beginning of the voyage to exercise due diligence to "[m]ake the ship seaworthy, and to "[m]ake the holds, refrigerating and cooling chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation."

37.     The Carrier violated COGSA § 3(1) by, among other things, "[m]ake the ship seaworthy, and to "[m]ake the holds, refrigerating and cooling chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage, and preservation."

4063013.v3

38.     The Carrier breached its duties and obligations under COGSA § 3(1) by, among other things:

      a.      Failing to place the Consignment in a Container with no odors;

      b.      Failing to place the Consignment in a Container that did not require fumigation;

      c.      Failing to carry out any pre-trip inspection or any adequate pre-trip inspection of the Container;

      d.      Permitting the Consignment to be carried in a Container that emitted odor or near a Container that emitted odor for some or all of the Voyage;

      e.      Failing to monitor the Container to ensure that it was not exposed to odors for the duration of the voyage;

      f.      Failing to have an adequate system in place to identify any odors and to rectify any odors promptly so as to avoid damage to the Consignment;

      g.      Failing to take adequate steps to ensure the Container was not affected by odor during the Voyage, or at all;

      h.      Failing to properly monitor the Container during the Carrier's period of responsibility to ensure that no odors affected the Container, or at all;

      i.      Failing to take steps to prevent the Consignment from being contaminated; and

      j.      Permitting the Consignment to be contaminated.

39.     As a direct and proximate result of the Carrier's breach of its duties and obligations under COGSA § 3, QBE, as subrogee and assignee of Lohmann, has been damaged in an amount believed to be in excess of $48,000.

## COUNT IV
## NEGLIGENCE

40.     QBE incorporates by reference all paragraphs previously set forth.

41.     The Carrier had a duty to exercise all due care and skill in and about the shipment, carriage, and handling of the Consignments.

42.     The Carrier breached its duty of due care and skill by, among other things:

　　　　a.     Failing to place the Consignment in a Container with no odors;

　　　　b.     Failing to place the Consignment in a Container that did not require fumigation;

　　　　c.     Failing to carry out any pre-trip inspection or any adequate pre-trip inspection of the Container;

　　　　d.     Permitting the Consignment to be carried in a Container that emitted odor or near a Container that emitted odor for some or all of the Voyage;

　　　　e.     Failing to monitor the Container to ensure that it was not exposed to odors for the duration of the voyage;

　　　　f.     Failing to have an adequate system in place to identify any odors and to rectify any odors promptly so as to avoid damage to the Consignment;

4063013.v3

g.      Failing to take adequate steps to ensure the Container was not affected by odor during the Voyage, or at all;

h.      Failing to properly monitor the Container during the Carrier's period of responsibility to ensure that no odors affected the Container, or at all;

i.      Failing to take steps to prevent the Consignment from being contaminated; and

j.      Permitting the Consignment to be contaminated.

43.    The Carrier's breach of the duties of care and skill injured Lohmann.

44.    As a direct and proximate result of the Carrier's breach of its duties of care and skill, QBE, as subrogee and assignee of Lohmann, has been damaged in an amount believed to be in excess of $48,000.

## REQUEST FOR RELIEF

QBE requests that the Court grant the following relief:

1.      Awarding QBE damages in excess of $48,000.00, plus incidental and consequential damages, with the precise amount to be proven at trial;

2.      Awarding QBE prejudgment and post-judgment interest as provided by law;

3.      Awarding QBE its attorney's fees, costs, and disbursements incurred in this action; and

4.      For such other and further relief as this Court deems just and equitable.

4063013.v3

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, QBE demands a trial by jury on all claims and issues triable to a jury.

**FELHABER LARSON**

Dated: November 8, 2023                    By: _____
                                                Christopher W. Boline (#393558)
                                           220 South Sixth Street, Suite 2200
                                           Minneapolis, MN 55402
                                           P: (612) 339-6321
                                           F: (612) 338-0535
                                           cboline@felhaber.com

                                           *Attorneys for Plaintiff QBE Insurance*
                                           *(Australia) Limited*